Good morning. May it please the court. Good morning, Judge Clevenger, Judge Schall. Good morning again, Judge Prost. The posture that this case comes to you is dismissal for lack of subject matter jurisdiction, lack of standing. The scene, if I may set it, is that SPC had been attempting for almost five years to exercise its rights under an exclusive field of use license agreement to sue for infringement. And the licensor refused to cooperate all of that time because, as it said in its response to the licensee initially, that it needed to protect its political interests. Okay, can we just get to the heart of the issue at least for me, which is where in the record did you preserve the argument that you're raising here that this should have been interpreted under Quebec law and not under U.S. law? The argument with respect to the interpretation under Quebec and Canadian law was discussed in connection with the oppositions to the motions to dismiss, in particular in Genio's motion to dismiss the cross-claim, where it was discussed... Can you point to the record? I mean, like, what did you give us in the appendix, the record? Well, for one thing, Your Honor, the license agreement was before the court. Right, right, but it wasn't the question that the Chief Judge asked you. Yes. You're making an argument here, it's a very simple argument, so I got this contract, and the contract says, it's got a forum selection clause in it that says all cases have to be litigated in Canada, right? Yes. And Canadian law will apply. And both of you stood up in front of the district court judge and said, please, don't send this case back to Canada, it will jeopardize our interest, please decide it today here, right? Well... You said that, right? I did, Your Honor. Okay, let me finish. So everybody agrees that insofar as the forum, there is a waiver of the requirement in the contract, you've got to go back to Canada and sit in front of a judge. SBC requested that. So the judge went on and decided the case here on the basis, not of Canadian law, but applying American law, right? And your argument is, the judge thought, the judge should have applied Canadian law. The Chief Judge asked you, where did you make that argument? Where did you tell the judge, you're supposed to use Canadian law? And I asked you, where in the record? And that question is still on the table, so I got all the documents. Your Honor, if you will allow me, I agree with you. Take a look at the transcript. I did not say to the district court judge, judge, if you decide it here, you should decide it under Canadian law. The reason for that was because we had argued reciprocally that discovery would be necessary in order to properly construe the contract. That in order for the determination of whether this was... That hinges on whether or not you're going to do it under Canadian law, right? Your discovery issue is tied to your argument that Canadian law should have been applied. And you needed discovery in order to pursue Canadian law as applies to this fact, to this case. One element of the discovery argument does not hinge on Canadian law, and that has to do with whether or not the activity that the plaintiff sought to bring suit against was within the field of use. That would not be a Canadian law determination. That would be determined by whether it was illegal... That has got to do with whether or not you're going to use Canadian law. That doesn't. I'm making the point that that you're not arguing... Are you arguing... On the Florida law, I didn't hear you arguing that you disagreed with the district court's decision. Your sole appeal here isn't it pitched on the fact that Canadian law was not applied by the district court judge. There are two points on appeal. That is one of them. And the second one is that the district court judge should have allowed discovery in order so that we could demonstrate both that it was within our field of use and therefore we had standing, and also that the licensor did not comply with the license agreement and behaved in such a way as to make this written consent requirement waived. So there are two elements of that, Your Honor. And when we walked in... Still haven't really gotten, for me at least, over the hurdle as to why it was that this district court judge erred by not applying Canadian law. Or the initial question still being on the table, which is where you raised that below. Your Honor, I reserved some time for rebuttal. There isn't the lights here. I would like to address that in terms of pointing out as to where in the record on rebuttal. Let me just raise one more thing for you, which for me is another dagger struck into the heart of your case. This issue we're talking about, about which law should be applied, is not an issue of patent law. It's an issue that's governed by regional circuit law. You're coming out of the 11th Circuit. The 11th Circuit has held precedentially that in a case such as this, where there's an allegation that foreign law should... I'm reading this because your adversary didn't find this case either. We do our own research. The 11th Circuit holds that when you're arguing that foreign law has to apply, you have an obligation to clearly present that argument to the district court judge. And if you don't, it's waived, and local law applies. The case is Mutual Service Insurance Company against Frick, 358 Bedford 1312. Thank you, Your Honor. It seems to me that the district court judge here, who knows that they're governed by 11th Circuit law on procedural issues, non-patent issues, the judge says, well, nobody's arguing Canadian law to me. In fact, at the hearing, you even suggested to the judge that if the case went off in Canada, it would be decided differently. Right? That the case would be decided differently? Well, you said your litigation may determine we have standing if you go in Quebec. You said that. That's at page 1432 of the record. It is true. But you didn't say the judge applied Canadian law. At the hearing, you're absolutely right, Your Honor. And that's what they call showtime? Yes. At a hearing on a motion to knock your case out on interpretation of a contract, it's showtime. Yes, Your Honor. In the 11th Circuit, if you don't say up, and you know you don't have to say up. In the case that I just cited to you, the party that was arguing in favor of foreign law had even in pretrial proceedings in front of the judge had said foreign law applies. That still wasn't enough because the district court judge had not been given the details. Yes, Your Honor. I'll only note that on page 3 of the transcript, which is JA 1423, at the very beginning of the hearing, the court says, quote, well, really, it seems to me pretty clear that this case needs to go to Canada to resolve the issues between the plaintiffs. And then both of you jumped up and said, oh, please don't send it to Canada. You made the argument that your side would be jeopardized, and you even made the argument that your adversary would be jeopardized. Most generous of you. That was in response to what the judge said. So assume for purposes of argument that we don't accept your argument that the judge erred in applying domestic law as opposed to Canada law. What's left of your appeal? What's left of the appeal, Your Honor, is that if it is going to be determined, the 11th Circuit in Florida, the 11th Circuit requires for a factual attack on subject matter jurisdiction that there be discovery so that SBC can demonstrate before the district court judge, before the district court. The contract says you can't sue unless you have written consent from the licensee, licensor, right? You do not have written consent. That is true. The district court construed the contract to require the written consent before you can bring the lawsuit. There was a debate below about what the contract meant under American law. You have not appealed the district court's ruling on what the contract meant on American law. That is true. So you're stuck with a holding by the district court that says under American law, written consent to sue is required. You do not have written consent. What discovery can possibly save you? Well, what are you going to get in discovery to overcome the fact that you don't have written consent? Well, yes. And notwithstanding, I mean, I'm trying to help you with this because if you went back and pressed the discovery, I'm a little worried about real trouble. I mean, what what can you possibly get out of discovery that will upset the interpretation of the contract, which you have not challenged, that you don't have written consent? Your Honor, notwithstanding the issue that you raised with respect to Canadian law, Ingenio did not dispute that Canadian law would govern the interpretation of the license agreement. I know you've said you both got up and said you can decide it. The both who are here are myself and Mr. Milgraf representing the defendants. Ingenio is not here. And Ingenio did not dispute that Canadian law, that Quebec civil law, would govern the interpretation of the license agreement. So if there were discovery, and that discovery would- I don't understand. I guess maybe because I'm still waiting for an answer to my first question, which is where on the record did you make the argument to the district court judge that Canadian law applies and this is how Canadian law ought to be applied for the results of my case? And the argument is- Well, you don't represent Ingenio anyway. I don't represent Ingenio. I don't, Your Honor. But there was no dispute below. Ingenio asked that it be sent to Canada so that it could be interpreted under Canadian law. And we said that it could be interpreted just as easily under Canadian law here. And Ingenio- I mean, the Chief Judge asking the question said, where did you, you meaning sweepstakes, meaning you, Mr. Roth, if not Joe Smith on behalf of somebody else, she asked you, where did you preserve this argument? I interrupted. I'm very sorry because I just said, oh my, why is he making an argument based on Ingenio? Ingenio is not even in the court. So maybe you can answer her question. I'm sorry I interrupted. Your Honor, standing right here right now, I do not have an exact page site for you. I can provide you with that in a moment. You were- Sorry? Were you, on behalf of sweepstakes, preserved the argument? You told the district court judge you've got to apply Canadian law? Not in the hearing, Your Honor. It's not in the transcript of the hearing. I did not say that in the hearing. The argument- In the hall? I mean, at the club afterwards? I mean, where did you say this to the judge? Your Honor, the argument was all relating to venue. The venue provision of the agreement, which also contains the application of the foreign law. It's all in the same- Clearly, we know that. Yes. We've read the record. I understand that. It was in front of the judge. No one expected, especially considering what the court announced at the very beginning of the hearing, no one expected- Well, partly because you hadn't done the research on the law, sir. I just cited you the case that says to the judge, go ahead and apply local law unless counsel has every jot and tittle given you the foreign law and told you how to apply it. Well, Your Honor- I mean, you wouldn't want to go back and fault this judge for following Eleventh Circuit law, would you? Your Honor, I would not. I would not. And 44.1 has no specific requirements with respect to how notice needs to be given. And we had not – and even my learned colleague had not seen that case. We did a lot of research on the issue. Well, except – okay, so let's just look at the rule, 44.1. I mean, it says they must – party who intends to raise an issue about foreign countries' law must give notice by a fleeting or other writing. Right. So I guess my question remains the same. Do you have a fleeting or other writing that you can point to in the record that gave this court notice that she should apply Canadian law? And the other writing that we're referring to, Your Honor, is the contract within the same exact clause where the venue provision is, is also the provision with regard to implication of Canadian law. And the cross-claimant admittedly is not here, was not saying apply Florida law, and we were not saying apply Florida law specifically. We were saying this court can construe the agreement, certainly. We wanted venue there. So you've given the court preliminary writings coming up to this hearing, right? You've filed written paper with the court, and not a single word in the written paper suggests foreign law should be applied. And to the contrary, on every legal issue we're talking about, you were citing federal circuit cases, United States law cases, right? Yes. So all the writings to which the chief judge has referred to under the rule that you supplied as an officer of the court indicated application of domestic law, correct? Yes. And so this judge is supposed to look at the contract and say, notwithstanding all of the writings that you have given me pursuant to the rules say apply American law, I should still apply Canadian law. Your Honor, we should at least know what law is being applied, and we should at least… And the law in the circuit is that unless you're very, very clear that the foreign law applies and you cite the foreign law in its substance, domestic law applies. And, Your Honor, again, I go back to the issue that it was understood application of the agreement, including the provision that requires foreign law be applied, was not disputed as between SPC and Ingenio where the dispute really was taking place. Well, I think we're… I'm sorry, Your Honor. No, that's okay. You've exhausted your rebuttal time beyond that. We'll give you two minutes for rebuttal. Mr. Milbrath. May it please the Court, Steve Milbrath, Orlando, on behalf of the defendants. Mr. Rothman did not say at any point in the record that Quebec law was any different from Florida law on any substantive issue regarding the exclusive license, a claimed exclusive license. And, therefore, there was no reason why the Court should even have a concern about Canadian law supplying the rule of decision with respect to that license. This license is not ambiguous. More importantly, Mr. Rothman never argued that the license agreement was ambiguous. Well, the license is also not ambiguous about which law is supposed to be applied. So… The license is unambiguous. It is unambiguous. Where you litigate and whose law you use. So, there is no reason why the Court would even worry about looking to Canadian law for any type of rule of construction because the contract is plain and unambiguous on its face. And federal circuit law really is the governing law with respect to standing. You have repeatedly said that federal circuit… Federal law is one thing. Canadian law is another. Right? Now, are you… Do you disagree with the Canadian law that's being summoned up here by your adversary? I'm looking at page 13 of the blue brief. Did you bring the blue brief? Well, that was… Did you bring the blue brief? That was the first time that he summoned up… Did you bring the blue brief? Do you have the blue brief? No, I don't have the blue brief. But I've read it. I've read it. Wait a second. Are you telling me that you come to argument in this Court and you do not bring the brief? Well, I've got it somewhere in my materials, but… Where is it? Is it on the table? It probably is, Your Honor. But my point is… Okay. Well, let me educate you. Yes. Right? Your adversary says in his blue brief, which I think you really should bring to argument and have memorized. He says, up in Canada, they don't really care about the language of the contract. The common intention of the parties, rather than adherence to the literal meaning of the words, governs up here in Canada. Now, in Canada, what's left of your plain name? Judge, number one, Mr. Roth… Do you get the impression that I'm not very happy with the way you all briefed this case and what you presented to us? Do you got that impression? I'm getting that impression. I didn't write… Right. Okay. So, you started off by saying the contract unambiguously is in your favor. And I think the Federal Circuit case law on this is controlling. You've never suggested that we're going to let some other jurisdiction's law be imported into an unambiguous licensing. Can you cite me a case in which we have held that a strict foreign law choice of law provision cannot apply? That federal law overrides the choice of law? Can you cite me any case… No, not that specifically says that, but I can cite you many cases in which you have said that this is a standing as a federal question. Federal Circuit law applies. Therefore, under Federal Circuit law, and I have cited you cases… I was asking you to give me the case in which that is being said where you have a choice of law provision that says notwithstanding the foregoing, notwithstanding the law, which is applied domestic law, apply foreign law. And you cannot find that case. There's no Federal Circuit case that says what you just said, but there is plenty of Federal… There's plenty of Federal Circuit cases that says that the question of standing fundamentally is federal. Under the Federal Circuit case law, you would not look to some other jurisdiction's law, even if the agreement says it governs, governs. You would not look to that law. Right, but that's not even before us. If this district court judge had… If, for example, if your adversary had properly presented Canadian law and the district court judge had applied Canadian law to a standing issue, we would then have the argument you're making now. At page 12… That was impermissible, that a choice of law provision cannot override domestic law. But we don't have that issue. Judge, we… And on the choice of law provision, it's not. Well, respectfully… Do you agree with me on that? No, I don't agree that his law… I don't agree that he has established that Canadian law is going to allow the contract to be supplanted by the unwritten intent. I don't read that law that way. Can you tell me which section of the Civil Code we're talking about? All of those sections that he block-quoted… I'm asking you for the specific section you're now challenging. I'm saying all of those sections are there. Can you give me a number? Or are you just talking off the top of your head now? I didn't memorize the section, Judge, but every portion of what he block-quoted in his brief was never brought to the attention of the trial court, and all of those sections are there. I wasn't suggesting it was. I was simply responding to your bold-faced allegation… Right. …that the contract was unambiguous about applying American law. Look, they use the English language in Quebec also, and subject to is an adverb. Subject to modifies all those provisions in that clause. Therefore, under any interpretation using the English language, the licensor had the right to say no, whether Mr. Rothman's client liked it or not. And there's no way that he can use Canadian law, which is there as an aid of construction of the agreement, to get a different result because you don't resort to an aid of construction unless there's some reason to question the intent of the parties as expressed in the contract. Is that the case under Canadian law too? I'm sorry? Is that the case under Canadian law too? I read the passage that he blocked quotes as there for the purpose of construing agreements where the intent of the parties is in doubt. You can't be in doubt as to the English language interpretation of that agreement. I don't understand. I mean irrespective of whether you're right or wrong on the ultimate issue, Article 1425, which he cites as the common intention of the parties rather than adherence to the literal meaning of the words, shall be sought. That suggests to me that even if the language is clear, the literal meaning is clear, you still look to the intention of the parties. I don't think you should assume that unless he can point us to a Canadian court decision, which he has not, that says we will not apply the English language to a clear and unambiguous contract, and we will instead allow someone to import into that unambiguous contract an alleged intent that is not expressed. Do you think any of this really matters to our adjudication of the case? It doesn't for several reasons, but let me point you to page 1250 of the Joint Appendix. Very important. Look at that page 1250. You will see that Mr. Rothman not only did not cite Canadian law, but he refers to Florida law, and a fair reading of that passage. First, he says the law to be applied is Florida law. One shouldn't have to look beyond that. Then he says the standing issue raises several questions. He's talking about the standing issue. None of which has anything to do with Quebec law. Well, Judge, he doesn't say that Quebec law in that passage. I don't disagree with you, and that's part and parcel of what I was saying. Your adversary was that all of the suggestions, if you would. I mean, when you're in front of a district court judge, you're talking. And all of the talk that went on led the judge to believe that domestic law would be applied, that foreign law didn't have any application here. Well, and he specifically, look at the title. The law to be applied is Florida law. I'm sorry, but I don't see how I can be faulted, or particularly this district judge, who is very able, judge how she can be faulted for accepting that Florida law is the law of the forum when he says it. So everyone in that room understood we were talking about a specific grant to a purported exclusive licensee applying federal circuit precedent. And there had to be language in that grant that gave the patent licensee the right to exclude others. It's clear that there is no such grant. Can I ask you a process question? My understanding from reading this is that there's been a new suit filed? Yes. Bringing in the right parties we're standing is not an issue. We're not in dispute. That's because SPC bought the patent back. Okay. And what is the status of that? That case was stayed yesterday, Your Honor, pending the outcome of this appeal. It was stayed by the district court, Southern District Court. And it was stayed pending the outcome of this appeal to determine whether a case would be moved to Middle District of Florida. And in the meantime, we filed covered business method petitions as well. And so there probably was... That suit, just a copy of this one, that was not a party? What's the nature of that suit? Well, Ingenio was not a party to that case. Ingenio was bought out, and so the only parties are SPC as a plaintiff. And most of my clients in this case are parties in that case. But now we don't have the issue of standing anymore, and we can proceed forward. Now, you asked us, or asked Mr. Rothen, whether it would make a difference under Canadian law, which you didn't cite to the court. And I would suggest to you, Judge, that it would not, because there has to be standing under federal precedent, federal circuit precedent, at the time suit is filed. And had he... Had the Florida case been stayed, and had he gone back to Canada, or convinced some Canadian judge that there was fraud or deception of any kind on the part of Ingenio, or that, in some way, they had waived the... That's the nature of his... I think his theory is that the course of conduct is such, and taking into all the allegations in his favor, that if a Canadian judge heard this, the Canadian judge would say, that course of conduct leads to a waiver of the requirement for written permission to bring the lawsuit. I think that's his argument. And if that occurred, Judge, what I'm saying is, he should have done that before, because that doesn't enable him to go back in time retroactively and create standing that didn't occur at the time suit was filed. And standing has to be adjudged at the point the litigation commenced. Now, we have cited many cases to that effect in our brief. And so, even if one assumes that this jurisdictional discovery had gone forward, since he clearly waived Quebec as a venue, he would not have been able to uncover any facts that would enable him retroactively. I'm not sure about what would actually happen, sir, if the foreign law had been correctly pled, and the district court judge rolled up her sleeves and said, whoops, this is all new to me, I'm going to have to adjudicate this case under foreign law. I don't know what would have happened to me. And I assume she then sits right there and says, okay, I take all of your course of conduct stuff. I'm arguing in his favor. And therefore, there's a waiver of the requirement to have consent to sue written writing. And therefore, this suit goes forward. I think a fair inference from her numerous remarks on the record is that she would have punted and sent the case to Quebec. I don't think Judge Conway would have accepted the— Well, but I mean, that you don't know. I mean, if my hypothetical I just gave you was unfair inference going in the other direction, because the judge would have said, holy moly, I'm not going to mess with Canadian law and ship it back, then what you were saying might have some— She did say that at least four times. I have a judge sitting down there in Florida who said, life's pretty dull down here. I got a lot of drug cases, and I got a lot of junk on my docket, and the chance to learn and apply some Canadian law might be fun. But under your own precedent, Your Honor, even if you were to assume that the judge had let jurisdictional discovery proceed forward, there is no way that that jurisdictional discovery would lead to the conclusion that they were standing at the time the lawsuit was commenced. So we suggest no amount of discovery would have made any difference with respect to my clients. It might have made a difference as to Ingenio. And remember, he had a cross-claim against Ingenio, which he has now settled. So we have no idea how that issue would have been resolved. But as to my clients, there would have been no standing at the time the suit commenced, period, even if under some version of the facts applicable under Canada, there was a waiver of the written consent. Thank you. Thank you. Your Honor, I'm going to gird my loins and not waive rebuttal. The exact same page that counsel cited to, which talks about Florida law, says at the end of that section... Are you talking about A1250? If it is, in fact, document 92 on page 15, which is our opposition to Ingenio's motion to dismiss cross-claim... We're in the Joint Appendix. He cited, to my recollection, as he cited A1250. So you said on the exact same page that he cited. Yes. Okay. At the bottom of the second paragraph of that section, the paragraph should begin, Issues of Florida Law, etc. At the bottom of the second paragraph of that section, the last two lines, it says in the middle, or if Quebec law does apply, then this court can easily construe Quebec civil law. Do you see that? Yes. Okay. So understand the context, Your Honor. This doesn't say Quebec law should be applied. But you have to understand the context. Ingenio has said, you're seeking to file a lawsuit that isn't in your field of use because the defendants were engaged in gambling, and we have that field of use. And we said, no, the defendants were not engaged in gambling if you construe what they were doing under Florida law, because gambling is a state-by-state basis. It's not going to be a Quebec law determination whether they were gambling or not. So if you construe what the defendants were doing, they were doing it in our field of use, which is what the Florida law part was. And so if, under Florida law, the defendants are in our field of use, then we should be entitled to file this suit, and Ingenio's refusal to consent would be in violation of Quebec civil law. That's the argument, Your Honors. And my time is up. Thank you. We thank both counsel.